**[Cite as *In re C.K.*, 2020-Ohio-5437.]**

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| C.K. | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| | : | |
| | : | |
| | : | Case No. CT2020-0027 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County
Court of Common Pleas, Juvenile
Division, Case No. 21730264

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      November 24, 2020

APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant/Father

D. MICHAEL HADDOX             MICHAEL J. CONNICK
Prosecuting Attorney             Michael J. Connick Co., LPA
Muskingum County, Ohio        301 Main Street, Suite H
                                          Zanesville, Ohio 43701
By: GERALD V. ANDERSON II
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth St., P.O. Box 189
Zanesville, Ohio 43702-0189

*Baldwin, J.*

**{¶1}**    Appellant, Corey King, appeals the decision of the Muskingum County Court of Common Pleas, Juvenile Division, granting the state's motion for permanent custody of his child, C.K.  Appellee is the State of Ohio.

### STATEMENT OF FACTS AND THE CASE

**{¶2}**    C.K. and a sibling, B.D. were placed in the custody of the state on December 6, 2017 and King and the children's mother were provided a case plan designed to resolve the problems that caused the removal of the children from the home. Appellee moved for permanent custody on December 20, 2019. The motion was heard on March 24, 2019 and the court granted permanent custody in an entry journalized on March 31, 2019. King is the father of C.K. only; the father of B.D. is unknown. The mother of the children did not appeal the trial court's decision.

**{¶3}**    C.K. was four years old when the Muskingum County Children's Services (MCCS) filed a complaint alleging she was neglected and dependent. The complaint was filed on December 5, 2017 and at an ex parte hearing the next day, the children were placed with a relative and in the Protective Supervision of MCCS.

**{¶4}**    MCCS filed a comprehensive assessment and case plan on January 4, 2018 finding that the Mother and Father of the Children have significant substance abuse issues, mental health, housing, and income concerns which significantly and adversely affected their ability to properly parent the children and provide them with a safe and sober home. No party objected to the case plan and the same was approved and adopted by the court.

**{¶5}** C.K. was found to be a dependent child at an adjudication conducted March 3, 2018 after the state dismissed the allegation of neglect. During the dispositional hearing held that day, C.K. was continued in the custody of a relative and in the Protective Supervision of MCCS.

**{¶6}** C.K. was moved to the Temporary Custody of MCCS on December 3, 2018. Temporary custody was extended on May 20, 2019 at a hearing that King did not attend. On December 20, 2019, MCCS moved for permanent custody. King responded by filing a motion for an extension of temporary custody and visitation. The hearing on the motion for permanent custody occurred on March 24, 2020 and the trial court issued its decision on March 31, 2020.

**{¶7}** King had completed a substance abuse assessment and MCCS referred him for treatment, but he was unsuccessfully discharged for not attending scheduled appointments. King was given the opportunity to participate in 182 drug screens but appeared for 38, with eight positive findings, the latest being December 19, 2019 for cocaine, soon after he had been released from incarceration. Seventeen dates for screens were missed because King was incarcerated, but 127 drug screens were missed without explanation or excuse and were presumed positive.

**{¶8}** King underwent a second substance abuse assessment on November 21, 2019 at Muskingum Behavioral Health and based upon King's disclosures, the drug counselor concluded King suffered a moderate cannabis use disorder and was recommended for counseling which he completed on February 21, 2020. King had been abusing cocaine as well as marijuana, but did not disclose his cocaine use to the counselor.

**{¶9}** King began counseling for domestic violence on February 25, 2020 and his counselor expected counseling to take six to twelve months to complete. The counselor had not been aware of Kings prior convictions for domestic violence or whether he had been through prior sessions of counseling for domestic violence which could have permitted him to tailor his answers to impress the counselor.

**{¶10}** King insisted that he had full time employment, claiming that he worked for his uncle as a carpet layer and was paid in cash in the amount of $300.00 to $400.00 per week, but he provided no documentation to corroborate his claim. He did admit that he has four other children that are not in his custody.

**{¶11}** From March 2018 until his incarceration in September 2019 for child support issues, King did not regularly visit or request visitation. He did request visitation while he was incarcerated and after he was released in November 2019.

**{¶12}** The trial court issued factual findings that lead it to conclude that permanent custody was warranted and in C.K.'s best interest. The trial court issued the following conclusions of law regarding King:

44. He "failed continuously and repeatedly to remedy the conditions causing the Children to be placed outside the Children's home."

45. He "suffer[s] from chronic mental illness and/or chemical dependency that is so severe that it makes [him] unable to provide an adequate permanent home for the children at the present time and/or at any time in the foreseeable future."

46. He "demonstrated a lack of commitment toward the children by failing to regularly support, visit and/or communicate with the children when able to do so" and has "shown an un-willingness to provide an adequate permanent home for the children."

47. He "has abandoned the children."

48. He has "been repeatedly incarcerated and the repeated incarceration prevents [him] from providing care for the children."

49. Hs is "unwilling/unable to provide food, clothing, shelter and other basic necessities for the minor children."

Entry Terminating Parental Rights and Granting Permanent Custody of the Minor Child to Muskingum County Children Services, March 31, 2020, Docket No. 130, pp. 8-9.

{¶13} Each of the findings of law included a reference to the factual finding upon which the trial court based its conclusion. The trial court also noted that the guardian ad litem concurred with the grant of permanent custody.

{¶14} The trial court terminated King's parental rights, placed C.K. in the permanent custody of MCCS and denied the mother's motion for a continuance of the permanent custody hearing and visitation and the father's motion to extend temporary custody and his motion for visitation.

{¶15} King filed a notice of appeal and asserted two assignments of error:

**{¶16}** "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WITHOUT APPLYING THE CLEAR AND CONVINCING EVIDENCE STANDARD."

**{¶17}** "II. THE TRIAL COURT ERRED BY FAILING TO GRANT A CONTINUANCE OF THE FINAL HEARING AND TO EXTEND TEMPORARY CUSTODY DURING THE COVID-19 EMERGENCY PERIOD OF MARCH 9, 2020-JULY 30, 2020."

### STANDARD OF REVIEW

**{¶18}** King asserts that the grant of permanent custody was against the manifest weight of the evidence. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact-finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶19}** On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also*, *State v. Thompkins*, 78 Ohio St.3d

380, 1997-Ohio-52, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 2.

**{¶20}** As for the second assignment of error, the decision to grant or deny a motion to continue is entrusted to the broad discretion of the trial court. *Hartt v. Munobe,* 67 Ohio St.3d 3, 9, 615 N.E.2d 617 (1993). Ordinarily, a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964); *State v. Wheat,* 5th Dist. Licking App. No. 2003–CA–00057, 2004–Ohio–2088.

**{¶21}** We review a trial court's decision of a motion to extend temporary custody for abuse of discretion as well.  *In re E.T., 9th Dist. Summit No. 22720, 2005-Ohio-6087, ¶ 9.* An abuse of discretion connotes more than a mere error in law or judgment; it implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**ANALYSIS**

**{¶22}** In his first assignment of error, King claims the trial court's grant of permanent custody to MCCS was against the manifest weight of the evidence in that it was not supported by clear and convincing evidence. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See also*, *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to

determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

**{¶23}** The trial court's authority to grant a motion for permanent custody is restricted to the grounds described in R.C. 2151.414(B)(1). In the case below, the court cited to several sections of R.C. 2151.414 in its findings. Because King does not attack the court's findings specifically but only claims the trial court's decision was against the manifest weight of the evidence, we need not review every reason cited by the trial court. Once we conclude the record contains clear and convincing evidence supporting one basis for granting permanent custody, review of the balance of the findings is unnecessary. For purposes of our review we will consider the trial court's finding that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

**{¶24}** The trial court was obligated to consider all relevant evidence to decide whether C.K. could not be placed with her parents within a reasonable time or should not be placed with them and determine, by clear and convincing evidence, that:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and

rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

R.C. 2151.414(E)(1)

**{¶25}** In addition to the findings regarding the resolution of the problems that caused the removal of C.K. from the parents, the trial court was also obligated to consider all relevant factors, including, but not limited to the following, to determine the best interest of C.K.:

(a)      The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)      The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)      The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)    The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)    Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶26}** King contends the trial court's decision is against the manifest weight of the evidence. He claims he "was achieving" "case plan success" that was disregarded by the trial court and that the trial court inappropriately relied upon one failed drug test in December 2019 and his failure to visit C.K. He also suggests that the trial court's conclusion that he "intentionally failed to accurately self-report and/or outright misled his counselor about the significance of his substance abuse concerns" is not supported by direct testimony. We have reviewed the record and find, as noted *supra*, that the trial court relied upon several other factors that King neglects to address in his brief and that the trial court's conclusion that King "failed to accurately self-report and/or outright misled" his counselor regarding his use of cocaine is supported by the facts in the record.

**{¶27}** King disclosed his marijuana habit and received counseling for that problem, but for reasons not included in the record, he did not reveal that he used cocaine and that had tested positive on several occasions prior to the hearing on permanent custody. The record further supports the trial court's conclusion that King suffered from chronic drug abuse as he consistently failed to appear for regular drug tests when given the opportunity to do so. He missed seventeen tests due to incarceration and 127 tests were missed without explanation or excuse and were considered presumptively positive.

{¶28} King's suggestion that the trial court was relying on a single positive test to support its findings is contradicted by the evidence in the record of a chronic and unaddressed drug addiction, his failure to maintain regular contact with his child and his current financial situation. King had nearly two years to resolve the problems that led to the removal of the child from the home, he did not begin to address those problems until the end of that time period and was unable to demonstrate that he had resolved the problems at the hearing. Instead, he requested additional time to complete tasks in the case plan, tacitly admitting that he was not prepared to have his child returned to his custody.

{¶29} King's inability to remedy his chemical dependency after being given two years to work toward that goal also lends support to the trial court's finding that King has not remedied the issues leading to removal of C.K. and that he is not capable of caring for C.K. at this time or in the near future. His incarceration for child support issues and lack of credible evidence of stable employment show a failure to remedy concerns regarding a stable income sufficient to provide for C.K. And his current living arrangement is subject to the discretion of his girlfriend and the evidence provided by King lacks any indication of a stable home.

{¶30} The record supports the trial court's finding, by clear and convincing evidence, that MCCS prepared a reasonable case plan but was prevented from working with King because he was unavailable, particularly while he was incarcerated. Further, the evidence and testimony show that "C.K. cannot be placed with [King] within a reasonable time or should not be placed with [him]." R.C. 2151.414(B)(1)(a).

{¶31} The trial court also found that the grant of permanent custody was in the best interest of the C.K. The record supports the trial court's conclusion as there was no evidence that King had any relationship with C.K., not having attempted to visit her for months and not being present for much of her life prior to MCCS taking custody. Further, MCCS introduced testimony that C.K. was fearful of being returned to her biological parents and was very content with her sibling in her current relative placement, where she had been placed at the beginning of the case.

{¶32} C.K. was presumably too young to express her wishes regarding custody, but the guardian ad litem submitted a report supporting an award of permanent custody.

{¶33} C.K. was placed with her maternal aunt from the beginning of this case and was still residing there at the time the motion for permanent custody had been filed. MCCS provided evidence that the maternal aunt was not willing to accept legal custody, but instead sought to adopt C.K. and her sibling. MCCS also expressed concern that C.K. was adversely affected by the uncertainty regarding her placement and that a legally secure and permanent resolution would benefit her.

{¶34} King suffers an unresolved chemical dependency and has failed to make significant progress toward completion of any requirement of the case plan despite the efforts of MCCS. King's attempt to convince this court that the trial court limited its conclusion to one drug test is unpersuasive.

{¶35} After consideration of the evidence in the record, we find that there was competent, credible, clear and convincing evidence to support the trial court's order that granting permanent custody and that the decision was not against the manifest weight of the evidence. The first assignment of error is denied.

II.

**{¶36}** In his second assignment of error, King contends the trial court erred by failing to grant a continuance of the final hearing and to extend temporary custody during the COVID-19 Emergency Period of March 9, 2020-July 30, 2020. King moved to continue temporary custody January 7, 2020 to "allow him to continue to work on his case plan" after being incarcerated due to "child support issues." King did not file a separate motion to continue, but made the following comments after the mother of the children argued in favor of her previously filed motion for a continuance: "Your Honor, we had filed a motion asking to extend temporary custody so we would be also in agreement with continuing the matter and would prefer to not do a permanent custody hearing today."

**{¶37}** While the characterization of this comment as a motion to continued would be a strained interpretation, the motion to extend temporary custody implies that the hearing on permanent custody would not go forward, so the lack of a separate motion is inconsequential in this context. Likewise, we find that we need only review the trial court's denial of the motion to extend temporary custody as that ruling served as a denial of any arguable motion to continue the hearing.

**{¶38}** We have concluded, in response to King's first assignment of error, that the decision of the trial court granting permanent custody to MCCS was not against the manifest weight of the evidence, so we are constrained by that finding to conclude that the trial court did not abuse its discretion by denying the motion to extend temporary custody. The record supports a conclusion that an extension would not be in the best interest of the child, that there had not been significant progress on the case plan of the child, and that there was not reasonable cause to believe that the child will be reunified

with King or otherwise permanently placed within the period of extension. King's motion filed with the trial court and his brief presented to this court do not address the best interest of the child, do not demonstrate significant progress and offer no reason to believe that C.K. could be reunified with King within a reasonable extension. R.C. 2151.415(D). The children had been in a temporary placement for approximately two years and the record supports a conclusion that further delay would be detrimental to their mental health. King made some progress on his case plan, but his failure to disclose his use of cocaine left his reliance on illegal drugs unresolved. His ability to provide a stable home was brought into serious question by his failure to document his current employment and the fact that during the pendency of the case plan he was incarcerated for failure to support children who are not a subject of this case weighs heavily against his ability and willingness to provide a stable home for C.K.  King placed himself a position to need additional time to complete the case plan and simultaneously performed so poorly that an extension of temporary custody would not serve the children's best interest.

**{¶39}** We find that the trial court did not abuse its discretion by denying King's motions. The second assignment of error is denied and the decision of the Muskingum County Court of Common Pleas, Juvenile Division is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Wise, Earle, J. concur.