[Cite as *In re J.C.*, 2021-Ohio-1133.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# VAN WERT COUNTY

IN RE:                                            CASE NO. 15-20-05

   J.C.,

ADJUDICATED DEPENDENT CHILD.
                                                  **O P I N I O N**
[ALICIA C. - APPELLANT]


IN RE:                                            CASE NO. 15-20-06

   T.C.,

ADJUDICATED DEPENDENT CHILD.
                                                  **O P I N I O N**
[ALICIA C. - APPELLANT]


**Appeal from Van Wert County Common Pleas Court
Juvenile Division
Trial Court Nos. 21910013 and 21920014**

**Judgment Affirmed**

**Date of Decision:  April 5, 2021**


**APPEARANCES:**

   *Gregory W. Unterbrink* **for Appellant**

   *Matthew A. Miller* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Respondent-appellant Alicia C. ("Alicia") brings this appeal from the judgments of the Court of Common Pleas of Van Wert County, Juvenile Division granting legal custody of the children to a maternal aunt, Tina C. ("Tina"). Alicia claims on appeal that the trial court's judgments were based upon a "pre-judgment" by the Van Wert County Department of Job and Family Services ("the Agency") and that the Agency was acting too swiftly to close the case. For the reasons set forth below, the judgments are affirmed.

{¶2} In March of 2019, Alicia gave birth to twin boys, J.C. and T.C. (collectively known as "the children"). Doc. 1. While still at the hospital, the Agency filed a complaint alleging that the children were dependent and neglected and requesting temporary custody of them. Doc. 1. The motion alleged that Alicia had extensive mental health issues that had caused the prior removal of her older twins. Doc. 1. A shelter care hearing was held on April 3, 2019. Doc. 10. At that time, the trial court awarded temporary custody of the children to the Agency. Doc. 10. A case plan was put into place which required Alicia to 1) address her mental health issues to allow her to parent in a safe manner, 2) maintain stable housing, and 3) utilize services to address her cognitive delays. Doc. 21.

{¶3} On April 18, 2019, an adjudicatory hearing was held. Doc. 36. The Agency withdrew the claim that the children were neglected. Doc. 36. Following the hearing, the trial court determined that the children were dependent and

continued temporary custody with the Agency. Doc. 36. The trial court noted at the disposition hearing that the Agency was requesting that temporary legal custody be granted to either Tina or to the Agency. Doc. 74. The Guardian Ad Litem ("GAL") recommended that temporary legal custody be granted to Tina. Doc. 74. Alicia requested that temporary legal custody be granted to either Bonnie H. ("Bonnie"), Alicia's mother and the guardian of her older twins, or to Tina. Doc. 74. Bonnie, as the guardian of Alicia and the older siblings, requested that the children be placed with her or, in the alternative, Tina. Doc. 74. The trial court ordered that temporary legal custody of the children be granted to Tina under the protective supervision of the Agency. Doc. 74.

{¶4} The Agency conducted a review of the case plan on September 24, 2019. Doc. 96. The Agency noted that Alicia had made some progress in her parenting by learning to recognize medical issues with the children and seeking appropriate medical aid. Doc. 96. However, the Agency also noted that Alicia's progress was insufficient as to her adherence to her mental health treatment and housing. Doc. 96. The Agency recommended that temporary legal custody continue with Tina. Doc. 96.

{¶5} On February 24, 2020, the Agency filed a motion to modify the temporary custody of the children to an order of legal custody to Tina. Doc. 152. The basis for the motion was the continued concern the Agency had regarding Alicia's cognitive ability to care for the children long term. Doc. 152. While this

motion was pending, the Agency completed another administrative review of the case plan. Doc. 157. The review shows that Alicia continued to make some progress in addressing her mental health issues and her parenting issues. Doc. 157. The review also indicated that Alicia was making some progress in maintaining housing and engaging services, but that she needed to comply with the recommendations of the various service providers. Doc. 157. Following the review, the trial court granted a six month extension of the Agency's temporary custody. Doc. 168. On May 4, 2020, Tina filed her statement of understanding as to what it would mean if she was named the legal custodian of the children. Doc. 178. A hearing on the motion was held on May 4 and May 29, 2020. Doc. 183. The trial court noted that Alicia and Bonnie opposed the motion, but no one else filed a motion seeking legal custody of the children. Doc. 183. The trial court also noted that the GAL recommended that the motion be granted. Doc. 183. After considering the best interest of the children, the trial court granted the motion to award legal custody of the children to Tina and to terminate the protective supervision of the Agency. Doc. 183. Alicia appeals from this judgment and raises the following assignments of error.

**First Assignment of Error**

**Whether [Alicia] was denied her right to be reunified with her children by reason of a pre-judgment of her condition and circumstances by [the Agency], amounting to bad faith, despite her efforts to comply with the family service plan.**

**Second Assignment of Error**

> **The trial court erred in not determining whether [the Agency] was proceeding too swiftly in light of [Alicia's] successes in the "Help Me Grow" program.**

Both assignments of error argue that the trial court erred in granting the Agency's motion to award legal custody of the children to Tina. Thus, we will address them together.

*Legal Standard*

{¶6} At the outset, this court notes that this is not a case involving the granting of permanent custody to the Agency, but is instead a grant of legal custody to a third party. Where permanent custody would legally terminate all parental rights, legal custody does not. R.C. 2151.011. "'Legal custody' means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(21). In other words, legal custody does not divest parents of all their rights and either parent may petition the court in the future for a modification of custody. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17, 843 N.E.2d 1188. Because the parent's right to regain custody is not permanently foreclosed, the standard used by the trial court in making a decision in

a legal custody proceeding is merely preponderance of the evidence. *In re B.P.*, 3d

Dist. Logan Nos. 8-15-07, 8-15-08, 2015-Ohio-5445, ¶ 19.

> **Preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, or of greater probative value.**

2 CR Ohio Jury Instruction 207.21. "In a dispositional hearing involving legal

custody, the focus is on the best interest of the child." *In re B.P, supra* at ¶ 19.

{¶7} R.C. 2151.353 provides that one disposition a trial court may make for

a child that has been adjudicated as dependent is to award legal custody of the child

to any person who was identified as a proposed legal custodian and who completes

the appropriate statement. R.C. 2151.353(A)(3). The statute does not set forth

specific factors to be considered in making the determination of best interest of the

child. *In re B.P., supra*. However, the factors set forth in R.C. 2151.414(D) for

determining whether a grant of permanent custody is in the best interest of the child

have been held to be "instructive." *Id.* These factors include the interaction of the

child with the various parties, the wishes of the child as told by the child or the GAL,

the custodial history of the child, and the child's need for a legally secure placement.

R.C. 2151.414(D). A decision reached by a trial court concerning a motion for legal

custody is within the sound discretion of the trial court and will not be reversed

absent an abuse of that discretion. *In re B.P., supra* at ¶ 21.

*Evidence Presented*

**{¶8}** A review of the record in this case shows that the following testimony was presented at the hearing. The Agency presented the following witnesses.

**{¶9}** Courtney Duer ("Duer") testified that she is a case worker for the Agency. Tr. 4. Duer indicated that the children were born in March of 2019, and were placed in the temporary legal custody of Tina in July of 2019. Tr. 5. The children were doing well with Tina and all of their needs were met by her. Tr. 5. In her opinion, the continued placement with Tina would be appropriate. Tr. 6. Duer testified that Alicia had completed the mental health assessment, but had not followed up with the recommended treatment. Tr. 7. Alicia had completed the initial portion of the parenting assessment. Tr. 7. Alicia was also in the process of completing a new assessment with the Board of Developmental Disabilities to determine what services they can provide for her. Tr. 7. Duer indicated that Alicia was working with Help Me Grow during her visits with the boys to improve her parenting skills. Tr. 8. Alicia's bills were consistently being paid and Bonnie was listed as a payee on Alicia's accounts to assist her. Tr. 8. Duer testified that in her opinion, the children could not be placed with Alicia at that time or in the near future. Tr. 9. This opinion was based upon her history with the Agency, her cognitive delays, her historical issues with anger, and her failure to comply with the medicines prescribed. Tr. 9. Alicia at that time was living in a small one bedroom apartment and had no beds or room for the children. Tr. 9. Duer also noted that

Alicia had expressed concern about the ability to maintain and heat the apartment. Tr. 9. Duer testified that she believed it would be in the best interest of the children to be placed in the legal custody of Tina and that the Agency's protective supervision be terminated.

{¶10} On cross-examination, Duer testified that her opinions are partially based upon her observations of how Alicia parents during visits that she has witnessed and from what Tina has told her about her observations. Tr. 17. Duer indicated that she did not think Alicia was not paying attention to the children, but that her cognitive limitations interfered with her ability to parent twin toddlers on her own. Tr. 18.

{¶11} Tina testified that she resides in a two bedroom apartment with the children. Tr. 32. Tina indicated that she would like for the children to be placed with her as she would know they would be safe and their needs would be met. Tr. 33. She also testified that it would not be a hardship on her. Tr. 33. According to Tina, the children were doing well, were happy, and were progressing well. Tr. 34. Tina testified that she tries to update Alicia daily as to what the children are doing that day. Tr. 35. When questioned if she would facilitate visits with Alicia, Tina indicated she absolutely would do so. Tr. 36. Tina also indicated that she takes the children to visit their older siblings at Bonnie's home. Tr. 40. Tina's concern with Alicia is that she did not always see to the children's needs when they arose. Tr. 37. Tina testified that on one occasion, J.C. needed a breathing treatment and half

way through it, Alicia got "irritated" and did not want to complete it. Tr. 49. In her opinon, Alicia does not understand the responsibility necessary to care for the children. Tr. 49.

{¶12} After those witnesses for the Agency, Alicia presented the testimony of Samantha Ball ("Ball"). Ball testified that she works for Help Me Grow and is working with Alicia to help her get the children returned. Tr. 56. Alicia was working on learning developmental information about the children, stress management, anger management, and setting goals for herself and the children. Tr. 56-57. According to Ball, Alicia was an active participant in the sessions and was very interactive with the children during the visits. Tr. 57. In Ball's opinion, Alicia was able to parent the children and she had no concerns. Tr. 57.

{¶13} On cross-examination Ball testified that Bonnie and the older siblings were present at some of the visits. Tr. 59. She did not see any inappropriate behavior by the older siblings towards the younger children. Tr. 59. The behavior she observed was "normal" for five year old children and they just needed reminded how little the babies were. Tr. 59. Ball admitted that she had not seen Alicia in a setting where she was caring for the children with no one else present to assist her if needed. Tr. 66.

{¶14} Bonnie testified that she is Alicia's mother and that she has guardianship of both Alicia's person and estate. Tr. 76. Bonnie also has legal custody of Alicia's older children. Tr. 76. Bonnie testified that actual physical

contact between Alicia and the children has not occurred in months because of COVID, so they were restricted to video visits with one year old children. Tr. 85. According to Bonnie, the children should have been placed with her so that Alicia could visit whenever she wanted. Tr. 86.

{¶15} On cross-examination, Bonnie admitted that Alicia was not capable of parenting the children on a full-time basis. Tr. 88. She did testify that Alicia was learning from her classes and indicated that she had completed a parenting class from the Van Wert Heath Department. Tr. 89. Bonnie admitted that Tina is meeting the needs of the children. Tr. 99.

{¶16} In this matter, the trial court determined that it would be in the best interests of the children to be placed in the legal custody of Tina. The trial court, in reaching this conclusion, discussed the various facts in this case. The trial court also specifically noted that the only motion seeking legal custody was the one filed on behalf of Tina. All of the findings of the trial court are supported by competent, credible evidence in the record. Thus, this Court does not find that the trial court abused its discretion in granting legal custody to Tina.

{¶17} The assignments of error also allege that the trial court erred by moving too swiftly in terminating the case and granting legal custody to Tina instead of extending the case to give Alicia more time to complete the case plan. Alicia also alleges that the Agency acted in bad faith by prejudging her case. A temporary custody order terminates one year after the date the child was first placed into shelter

care unless a motion is filed ot extend it. R.C. 2151.353(G). Additionally, a party can file a motion to terminate the order of temporary custody. R.C. 2151.353(H). Although the case can be extended for an additional time, there is no requirement that the extension must occur and the determination as to whether the extension or termination is in the best interest of the child is left to the trial court's discretion. *Matter of C.K.*, 5th Dist. Muskingum No. CT2020-0027, 2020-Ohio-5437, ¶ 21. Thus, the decision will only be reversed if the decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "An abuse of discretion exists if the court's decision regarding the best interests is not supported by competent credible evidence." *In re D.M.*, 1st Dist. Hamilton No. C-140648, 2015-Ohio-3853.

{¶18} Here, the children were placed in shelter care on April 3, 2019. Thus, a party needed to file a motion to extend temporary care before the one-year mark. The only motion filed before that time was Tina's motion for legal custody and to have protective supervision terminated. The trial court did grant a six-month extension of the temporary custody in order to have time to address the motion for legal custody on April 2, 2020. Doc. 168. A review of the record shows that neither Alicia nor Bonnie filed any motion for Bonnie to have legal custody. Although the trial court could have extended the time for Alicia to continue to work the case plan, the trial court was under no obligation to do so. Pursuant to R.C. 2151.353, the trial court could have awarded legal custody of the children and closed the case as soon

as the initial disposition following adjudication if all the required papers had been filed. Additionally, although the statute does not specifically set forth factors, the custodial history of the children and that of older siblings would be a reasonable factor for the trial court to consider when determining the best interests of the children. Thus the trial court could reasonably consider Alicia's past history with the Agency regarding the older siblings when determining the best interests of the younger children. Considering all of the evidence before the trial court, this court does not find that the trial court's determination that the best interests of the children would be served by granting Tina's motion for legal custody was an abuse of discretion. The assignments of error are overruled.

{¶19} Having found no error prejudicial to the Appellant in the particulars assigned and argued, the judgments of the Court of Common Pleas of Van Wert County, Juvenile Division, are affirmed.

*Judgments Affirmed*

**MILLER and SHAW, J.J., concur.**

**/hls**