[Cite as *In re T.T.*, 2022-Ohio-218.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTERS OF: | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. John W. Wise, J. |
| T.T. | Hon. Craig R. Baldwin, J. |
| and | Case Nos. 2021 CA 0018 and<br>2021 CA 0019 |
| J.T. |  |
| Adjudged Dependent Children | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 20203025 and 20203026


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    January 28, 2022


APPEARANCES:

For Appellant Mother

FREDERICK A. SEALOVER
P. O. Box 2910
Zanesville, Ohio 43702-2910

For Appellee

SARA R. CHISNELL
CCJFS
725 Pine Street
Coshocton, Ohio 43812

*Wise, J.*

{¶1}    Appellant-Mother A.G. appeals from the July 8, 2021, Judgment Entry of the Coshocton County Court of Common Pleas, Juvenile Division, granting legal custody of the minor children T.T. and J.T. to Josh Miller, a non-relative kinship provider.

STATEMENT OF THE FACTS AND CASE

{¶2}    A.G. ("Appellant-Mother") and R.T. ("Father") are the parents of minor children T.T. and J.T.

{¶3}    On March 10, 2020, Coshocton County Job and Family Services ("JFS") filed two respective Complaints alleging that T.T. and J.T. were abused, neglected, and dependent children, primarily due to Appellant-Mother's substance abuse, domestic violence, and lack of adequate care. JFS requested protective supervision of the children to JFS, with the children to remain in A.G.'s custody in its pre-dispositional motion.

{¶4}    On April 8, 2020, at the hearing on JFS's motion for pre-dispositional interim orders, the trial court placed the children in the emergency temporary custody of Appellant-Mother, with emergency protective supervision by the Agency.

{¶5}    On June 4, 2020, an adjudicatory hearing was held. At said hearing, both parents made admissions to dependency, and JFS did not pursue its allegations of neglect and dependency. The children were placed in the temporary custody of Joshua Miller, Appellant-Mother's boyfriend at that time.

{¶6}    On January 13, 2021, JFS filed a motion for a six-month extension of Mr. Miller's custody.

{¶7}    On February 24, 2021, an annual court review was held wherein the trial court granted the request for a six-month extension on the case, requested by JFS

because Father was coming into compliance with his case plan and wished to pursue reunification. Appellant-Mother was not in compliance with her case plan: she had provided positive drug screens, was avoiding JFS, refused to engage in Family Drug Court, was not employed, and her visitation with her children was suspended.

**{¶8}** On March 2, 2021, GAL Jeanette Moll filed a motion for legal custody of the children to Mr. Miller.

**{¶9}** On April 27, 2021, JFS also filed a motion for legal custody of the children to Mr. Miller, with a proposed parenting time plan. The parenting plan was created to protect the children in the future while still permitting Mother to have contact.

**{¶10}** The trial court held a legal custody hearing on June 10, 2021.

**{¶11}** At the legal custody hearing, ongoing JFS Caseworker Deanna Lanham testified that Mother's progress on her case plan had been minimal. (T. at 40). Caseworker Lanham testified that while Mother had completed a portion of her Coshocton Behavioral Health Choices treatment, parenting classes, and the requested parenting assessment from Dr. Wolfgang, much of her case plan objectives were lacking. (T. at 12). She stated that Mother withdrew from the Family Drug Court program and started a new substance abuse treatment program days before the legal custody hearing, after being in four previous treatment facilities since February, 2020. (T. at 12-13). Mother had failed to address her substance abuse issues and regressed in the months prior to the legal custody hearing by falling back into substance abuse and resuming a relationship with a prior boyfriend, Cale H., who also had a history of substance abuse and domestic violence. (T. at 13). Mother was dishonest and hid the relationship from the case worker and the GAL. (T. at 51, 55). Cale H. had been in prison for felony domestic violence in

which Appellant-Mother was the victim. (T. at 27, 113). The minor children were present at the time of the incident. (T. at 113). At the time of the hearing, Appellant-Mother was pregnant with Cale H.'s child. (T. at 15, 32, 88).

**{¶12}** Caseworker Lanham testified Mother tested positive for methamphetamines and amphetamines in February, 2021, and then subsequently refused drug screens. (T. at 15). Mother stopped contact and cooperation with the agency, had no employment, no reported housing, and no contact with her children for nearly 6 months. (T. at 16). Ms. Lanham testified that due to her lack of compliance, failure to address issues, and past harm done to the children due to her parenting under the influence, any future visitation for Mother would have to be counselor approved and supervised to protect the children. (T. at 17). She further testified that there was not sufficient time for Mother to complete her case plan even if the court granted a six-month extension. (T. at 34-35, 41).

**{¶13}** Mother refused to comply with CBHC recommendations or attend any of their referred treatment facilities. (T. at 40).

**{¶14}** GAL Jeanette Moll testified that Mother has a history of failing to complete programs and even when she has, surrounds herself with substance abusers. (T. at 52). She testified that "[t]here has never been an extended period of time where [Appellant] has been able to be clean and move forward." (T. at 51).

**{¶15}** Nicole White, Mother's Counselor at Riverside Recovery Services, testified that the treatment facility Mother had just begun prior to the hearing was not one recommended by CBHC, and was not a residential treatment facility as she was required to complete. (T. at 76).

**{¶16}** Appellant-Mother testified that she had been clean for five months as of the date of the hearing; however, there was no corroborating evidence to support that, and the Agency treats a refusal to drug screen as a positive. (T. at 81). Mother testified that she was not in compliance with any service provider at the time of the legal custody hearing.  (T. at 110).

**{¶17}** By Judgment Entry filed on July 8, 2021, the trial court granted Mr. Miller legal custody. The trial court adopted the parenting time plan requested by JFS as part of its Entry.

**{¶18}** Appellant-Mother now raises the following assignments of error on appeal:

<u>ASSIGNMENTS OF ERROR</u>

**{¶19}** "I. THE TRIAL COURT ERRED BY DENYING A SIX-MONTH EXTENSION OF TEMPORARY CUSTODY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶20}** "II. THE TRIAL COURT ERRED BY ADOPTING A RESTRICTIVE PARENTING TIME SCHEME AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**I.**

**{¶21}** Appellant-Mother herein argues that the trial court's denial of her motion for an additional six-month extension on her case plan was against the manifest weight of the evidence. We disagree.

**{¶22}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact-finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly,

judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶23}** On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also*, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 2.

<u>6-month extension</u>

**{¶24}** We review a trial court's decision of a motion to extend temporary custody for abuse of discretion as well. *Matter of C.K.*, 5th Dist. Muskingum No. CT2020-0027, 2020-Ohio-5437, ¶ 21, citing *In re E.T.,* 9th Dist. Summit No. 22720, 2005-Ohio-6087, ¶ 9. An abuse of discretion connotes more than a mere error in law or judgment; it implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶25}** Pursuant to R.C. §2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an

extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. *See, In re McNab,* 5th Dist. Nos. 2007 AP 11 0074, 2007 AP 11 0075, 2008–Ohio–1638.

**{¶26}** Mother's assertion an extension of time would allow her to make continued progress on the case plan is belied by Mother's history of non-compliance with her case plan, her failed drug screens and failure to maintain sobriety, her failure to engage with service providers, her decision to re-engage with a former boyfriend who had previously assaulted her and was sentenced to prison for domestic violence, and her failure to have any recent visits with her children.

**{¶27}** We find Appellant has failed to demonstrate an abuse of discretion by the trial court in denying the motion for a six-month extension. As set forth more fully above, the evidence before the trial court supports the conclusion that an extension of temporary custody was not in the children's best interests, but, rather, their interests were best served by award of legal custody to Mr. Miller. Further, the evidence also supports the trial court's conclusion that Appellant-Mother cannot rectify her ability to make good decisions for the benefit of her children and promote reunification within the next six months.

**{¶28}** Based on the foregoing, we find that the trial court did not err in awarding legal custody of T.T. and J.T. to Mr. Miller or by denying Appellant-Mother's motion for six-month extension of temporary custody.

**II.**

**{¶29}** In her second assignment of error, Appellant-Mother argues that the trial court's adoption of the parenting time order was against the manifest weight of the evidence. We disagree.

**{¶30}** Specifically, Appellant-Mother argues that the parenting time order is both restrictive and too vague.

**{¶31}** The Proposed Parenting Time plan adopted by the trial court provides:

> The Mother's advancement to parenting time is conditioned upon: 1. The Mother following the recommendations of Coshocton Behavioral Health Choices (CBHC) to receive and successfully complete residential treatment; 2. The Mother remain clean and sober; 3. The Mother have no criminal activity; and 4. The Mother not permitting the Children to have contact with individuals with criminal conduct.

> Legal Custodian, Josh Miller, shall no[t] permit contact --directly or indirectly- or parenting time with Mother, [A.G.], until these requirements are met.

> Phase One:
> Mother may have contact with the minor children in family counseling as recommended by the Children's counselor. Telephone calls with both Parents per the discretion of the Legal Custodian …

**{¶32}** (Guardian Ad Litem Report, May 25, 2021; July 8, 2021, Judgment Entry, Attachment 1).

**{¶33}** Phase Two then provides that Appellant-Mother "may have parenting time two (2) hours per week, supervised by the Coshocton Family PACT Center" with the consent of the Children's counselor. (Guardian Ad Litem Report, May 25, 2021; July 8, 2021 Judgment Entry, Attachment 1).

**{¶34}** Upon review we find that the Parenting Time plan is neither vague nor too restrictive. We find that the plan is conditioned upon Appellant-Mother's behavior. If she

follows the requirements for residential treatment, maintains sobriety and stable housing, refrains from criminal activity and protects her children by not having them in the presence of criminals, she can petition the court to alter and amend the parenting time plan.

**{¶35}** Mother herself testified that parenting time for her should "start kind of gradual." (T. at 92).

**{¶36}** We further note that Mother has not lost custody of her children and reunification with mother is still a possibility. The trial court retains jurisdiction over all parenting issues and rights.

**{¶37}** Upon review, based upon a preponderance of the evidence presented, we cannot say the trial court abused its discretion in adopting the parenting time order in this case.

**{¶38}** Accordingly, the judgment of the Court of Common Pleas, Juvenile Division, Coshocton County, Ohio, granting legal custody to Mr. Miller is affirmed.


By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.


JWW/kw 0126