[Cite as *In re L.H.*, 2026-Ohio-2166.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| IN RE: L.H. | Case No. 2026 CA00005 |
| | Opinion And Judgment Entry |
| | Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2024JCV00575 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: June 9, 2026 |

BEFORE: Andrew J. King, William B. Hoffman, and Kevin W. Popham, Judges

APPEARANCES: James B. Phillips, for Plaintiff-Appellee; Conner Herbert, Pro Se for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}  Appellant C.H. ("Father"), appeals the December 16, 2025, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, terminating his parental rights and awarding permanent custody of his minor child, L.H., to appellee, Stark County Jobs and Family Services ("the Department"), pursuant to R.C. 2151.414. For the reasons below, we affirm.

**Facts and Procedural History**

**Initiation of the Case**

{¶2} In October 2023, the Department became involved with the family after concerns arose regarding Mother's failure to visit and address the medical needs of L.H.'s sibling[1]. Additional concerns regarding Mother's and Father's substance abuse surfaced in March 2024. As a result, L.H. was placed with paternal grandmother pursuant to a safety plan.

{¶3} When paternal grandmother later informed the Department that she could no longer care for L.H., on May 28, 2024, the Department filed a complaint and motion for temporary custody. L.H. was thereafter placed in the temporary custody of the Department. On August 20, 2024, the juvenile court adjudicated L.H. a dependent child.

### Case Plan and Review Hearings

{¶4} Father's case plan required him to complete substance-abuse and parenting assessments, engage in substance-abuse and mental-health treatment, maintain sobriety, and obtain stable housing and employment. Father completed a parenting assessment through Lighthouse Family Center. (State's Ex. A).

{¶5} Throughout the pendency of the case, the juvenile court conducted regular review hearings and repeatedly found that the Department had made reasonable efforts to prevent the continued removal of L.H. from the home and to work toward reunification.

### Permanent Custody Hearing

{¶6} On September 9, 2025, the Department filed its motion for permanent custody. On December 16, 2025, the court conducted an evidentiary hearing on the motion.

---

[1] Mother is not a party to this appeal.

{¶7} Dr. Aimee Thomas, a psychologist with Lighthouse Family Counseling Center, testified as an expert witness. Dr. Thomas evaluated Father on October 8, 2024, and November 18, 2024.

{¶8} Dr. Thomas testified that Father admitted he had used methamphetamine daily since the age of nineteen. Father also disclosed longstanding depression and anxiety, a psychiatric hospitalization in May 2024, and marijuana use to self-medicate his anxiety symptoms. Father reported that he had been prescribed Wellbutrin.

{¶9} Dr. Thomas further testified that Father admitted allowing his prescribed medication to lapse and acknowledged that he had not committed to consistent mental-health treatment. Dr. Thomas diagnosed Father with Major Depressive Disorder, recurrent; Generalized Anxiety Disorder; Stimulant Use Disorder; and Cannabis Use Disorder.

{¶10} Dr. Thomas recommended substance-abuse treatment and noted that Father provided misleading information during portions of the evaluation that required independent verification. She further recommended that Father maintain sobriety from all mood-altering substances for at least nine months before reunification could safely occur, participate in a twelve-step recovery program, engage in comprehensive mental-health treatment, and obtain stable housing and employment. Dr. Thomas additionally recommended that, if reunification were eventually achieved, L.H. should be placed in protective daycare.

{¶11} Dr. Thomas testified that Father's methamphetamine use significantly impaired his ability to safely parent the child. According to Dr. Thomas, while actively using methamphetamine, Father would be unable to adequately focus on the child's needs and would lack the consistency and attentiveness necessary to provide appropriate care.

She further testified that withdrawal from methamphetamine can mimic severe depressive symptoms, likewise impairing a parent's ability to safely care for a child and increasing the risk of harm to the child.

{¶12} Caseworker Wanda Pounds testified that Father was participating in inpatient rehabilitation for substance abuse when she was first assigned to the case. Following his release, she referred Father to CommQuest for continued treatment and aftercare services.

{¶13} Caseworker Pounds testified that Father completed the New Day rehabilitation program and later entered aftercare treatment through CommQuest. However, shortly after completing treatment, Father was charged with operating a vehicle while under the influence of alcohol or drugs ("OVI"), resulting in the suspension of his driver's license. In September 2025, Father relapsed, tested positive for methamphetamine, and re-entered treatment through New Day Recovery.

{¶14} Caseworker Pounds further testified that Father failed to successfully engage in mental-health counseling while participating in treatment at CommQuest and likewise failed to complete a parenting program.

{¶15} Father testified on his own behalf. He stated that he was currently enrolled in New Day Recovery's partial hospitalization program and residing in Level 3 sober-living housing. Father testified that he expected to transition into intensive outpatient treatment ("IOP") and eventually into Level 2 housing. He further testified that he attended weekly twelve-step meetings and regularly attended a Celebrate Recovery church program.

{¶16} Although Father testified he had maintained sobriety for more than fifty days at the time of the hearing, he acknowledged that his most recent relapse occurred

only months earlier, in September 2025. Father further acknowledged that substantial portions of his case plan remained incomplete but requested additional time to continue treatment, maintain sobriety, secure housing, and obtain employment. Father testified that, if granted additional time, he expected to achieve six months of sobriety by April 2026 and continue progressing through recovery programming and sober-living placement.

{¶17} Father also testified that although he owned a vehicle, his OVI-related driver's license suspension remained in effect for several additional months.

**Best Interest Evidence**

{¶18} The Department also presented evidence regarding L.H.'s placement, stability, and need for permanency.

{¶19} Caseworker Pounds testified that L.H. was four years old and had no significant medical or developmental concerns. She testified that L.H. had remained in the same stable foster placement for approximately fifteen months and was thriving there. According to Pounds, L.H. was strongly bonded with the foster parents, looked to them for love, reassurance, and guidance, and responded appropriately to their discipline and caregiving. The foster parents expressed a desire to adopt L.H.

{¶20} Pounds acknowledged that Father consistently visited the child and that a bond existed between Father and L.H.

{¶21} Pounds further testified that the Department explored placement with paternal grandmother through a home study; however, paternal grandmother ultimately determined she could not provide long-term care for the child. Paternal grandmother instead recommended the current foster placement, which the Department considered a kinship placement.

{¶22} Caseworker Pounds testified that permanent custody was in L.H.'s best interest and that the child's need for permanence and stability outweighed any harm that might result from terminating parental rights. The Guardian ad Litem likewise concluded that permanent custody was in the child's best interest.

**Trial Court Decision**

{¶23} On December 16, 2025, the juvenile court issued its judgment granting permanent custody of L.H. to the Department and terminating Father's parental rights.

**Assignments of Error**

{¶24} Father raises three assignments of error,

{¶25} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BY DENYING RESTORATION OF CUSTODY WHERE FATHER REMEDIED THE CONDITIONS THAT LED TO REMOVAL, AND WHERE WITNESSES PRESENTED AGAINST HIM RELIED UPON OUTDATED INFORMATION IN EXCESS OF ONE YEAR OLD RATHER THAN EVIDENCE OF HIS CURRENT FITNESS."

{¶26} "II. THE TRIAL COURT'S DECISION IMPROPERLY INTERFERED WITH FATHER'S FUNDAMENTAL LIBERTY INTEREST IN THE CARE AND CUSTODY OF HIS CHILD BY RELYING PRIMARILY ON OUTDATED TESTIMONY RATHER THAN EVIDENCE OF HIS PRESENT ABILITY TO PARENT."

{¶27} "III. THE TRIAL COURT FAILED TO PROPERLY APPLY OHIO LAW GOVERNING DEPENDENCY AND CUSTODY DETERMINATIONS BY DISREGARDING SUBSTANTIAL EVIDENCE THAT FATHER REMEDIED THE CONDITIONS THAT LED TO REMOVAL AND BY ISSUING A FINAL ORDER

WITHOUT CONSIDERING OR GRANTING A SIX-MONTH EXTENSION OF TEMPORARY CUSTODY."

**Fundamental Rights and Governing Standards**

**{¶28}** A parent's right to raise a child is an "essential" and "basic" civil right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972). The interest in the care, custody, and management of one's child is therefore fundamental. *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Because permanent termination of parental rights has aptly been described as "the family law equivalent of the death penalty," parents must be afforded every procedural and substantive protection the law allows. *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991). Accordingly, a juvenile court's award of permanent custody must be supported by clear and convincing evidence. R.C. 2151.414(B)(1).

**Standard of Review**

**{¶29}** The Supreme Court of Ohio has clarified that appellate review of permanent-custody determinations under R.C. 2151.414 proceeds under the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, depending on the nature of the arguments raised. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. Here, Father challenges both.

**Sufficiency of the Evidence**

**{¶30}** Sufficiency of the evidence presents a question of law, which we review de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13. Sufficiency is a test of adequacy - whether the evidence, if believed, permits the factfinder

to reach the challenged conclusion as a matter of law. *In re Z.C.* at ¶ 13, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶31} Where, as here, the governing burden of proof is clear and convincing evidence, the reviewing court examines the record to determine whether the juvenile court had before it sufficient evidence from which it could form a firm belief or conviction that the statutory requirements for permanent custody were met. *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104 (1986); *In re Z.C.* at ¶¶ 7-8; *In re L.A.*, 2024-Ohio-3436, ¶ 59 (5th Dist.).

**Manifest Weight of the Evidence**

{¶32} Manifest-weight review concerns the persuasive effect of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. In conducting this review, we consider whether the trier of fact clearly lost its way in resolving evidentiary conflicts, resulting in a manifest miscarriage of justice - even where the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 386-387.

{¶33} Although an appellate court may act as a "thirteenth juror," we afford substantial deference to the trial court's credibility determinations, given its superior position to observe the witnesses. *Eastley* at ¶ 21; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). A manifest-weight challenge succeeds only in the exceptional case where the evidence weighs heavily against the judgment. *Thompkins* at 387.

**Statutory Framework for Permanent Custody**

{¶34} R.C. 2151.414 establishes a two-pronged inquiry for permanent custody. The juvenile court must find, by clear and convincing evidence, (1) that one of the

circumstances set forth in R.C. 2151.414(B)(1)(a)-(d) applies, and (2) that granting permanent custody is in the child's best interest.

{¶35} Here, the lower court found that R.C. 2151.414(B)(1)(a) was satisfied for the child. That finding - when coupled with a best-interest determination - is sufficient to support an award of permanent custody. *In re Dalton*, 2007-Ohio-5805 (5th Dist.); *In re K.C.*, 2024-Ohio-2081, ¶ 45 (10th Dist.).

**Placement with Father Within a Reasonable Time**

**R.C. 2151.414(B)(1)(a)**

{¶36} The lower court determined that L.H. cannot be placed with Father within a reasonable time or should not be placed with him, pursuant to R.C. 2151.414(B)(1)(a). That determination is supported by clear and convincing evidence.

{¶37} Under R.C. 2151.414(E), if the court finds that any one of the enumerated factors exists as to a parent, it must conclude that the child cannot or should not be placed with that parent within a reasonable time. *In re William S.*, 75 Ohio St.3d 95 (1996).

{¶38} Here, the record amply supports the court's findings under R.C. 2151.414(E)(1) and (2).

{¶39} Dr. Aimee Thomas, a psychologist with Lighthouse Family Counseling Center who testified as an expert witness, provided detailed testimony establishing that Father's untreated mental-health conditions and chronic substance abuse rendered him incapable of safely parenting the child. After evaluating Father over two separate sessions, Dr. Thomas testified that Father admitted to daily methamphetamine use beginning at age nineteen, ongoing marijuana use to self-medicate anxiety, recurrent depression, anxiety disorders, and a psychiatric hospitalization in May 2024. Father further

acknowledged failing to consistently participate in mental-health treatment and allowing his prescribed medication to lapse. Dr. Thomas diagnosed Father with Major Depressive Disorder, Generalized Anxiety Disorder, Stimulant Use Disorder, and Cannabis Use Disorder. She testified that Father's methamphetamine addiction severely impaired his ability to focus on the child's needs, maintain consistency, and provide safe and attentive care. She further explained that methamphetamine withdrawal can produce symptoms resembling severe depression, further compromising a parent's ability to function safely and increasing the likelihood of harm to the child. Dr. Thomas emphasized that reunification could not safely occur unless Father achieved at least nine months of sobriety, engaged in comprehensive substance-abuse and mental-health treatment, participated in a twelve-step recovery program, and obtained stable housing and employment. Her testimony demonstrated that Father's longstanding addiction, untreated mental-health issues, and instability posed a substantial and ongoing risk to the child's safety and well-being.

{¶40} The evidence showed that Father has struggled with longstanding substance-abuse issues and has made only limited progress toward completing his case-plan objectives. At the beginning of the case, Father was already participating in inpatient rehabilitation and later completed treatment through the New Day Rehabilitation Program before transitioning to aftercare services at CommQuest. However, shortly afterward, he was charged with operating a vehicle under the influence, resulting in a suspended driver's license. In September 2025, Father relapsed and tested positive for methamphetamine, requiring him to re-enter treatment at New Day Recovery. At the time of the hearing, he remained in a partial hospitalization program and was residing in Level 3 sober-living housing while attempting to progress toward less restrictive treatment.

Although Father testified that he had achieved more than fifty days of sobriety, he acknowledged that his relapse had occurred only months earlier and admitted that substantial portions of his case plan, including mental-health counseling and parenting education, remained incomplete.

{¶41} Overall, the evidence demonstrated some recent efforts toward rehabilitation but also showed ongoing instability, repeated relapse, and incomplete compliance with critical reunification requirements. Although Father attempted to engage in substance abuse treatment, completion - or partial completion - of a case plan does not itself preclude permanent custody. A case plan is a means to an end, not the end itself. *In re J.L.*, 2004-Ohio-6024, ¶ 20 (8th Dist.). Where, as here, the problems that precipitated removal persist despite services, the court does not err in finding that reunification is not reasonably achievable. *In re Summerfield*, 2005-Ohio-5523 (5th Dist.); *In re K.C.*, 2024-Ohio-2081, ¶ 56 (10th Dist.).

{¶42} Although the record reflects that Father loves L.H., love alone does not overcome years of noncompliance, instability, and unmet needs. The evidence supports the lower court's conclusion that Father has made virtually no sustained progress since the Department's initial involvement, and that additional time would not alter that reality.

{¶43} Accordingly, we conclude that competent, credible evidence supports the lower court's finding that the child cannot be placed with Father within a reasonable time or should not be placed with him.

**Best Interest of the Child**

**R.C. 2151.414(D)**

**{¶44}** When determining whether permanent custody is in a child's best interest, a juvenile court must consider all relevant factors, including those set forth in R.C. 2151.414(D)(1). No single factor is dispositive; rather, the court must weigh the totality of the circumstances. *In re Schaefer*, 2006-Ohio-5513, ¶ 56.

**{¶45}** A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 2000 Ohio App.LEXIS 5261 (5th Dist. Nov. 13, 2000), *citing In re Awkal,* 95 Ohio App.3d 309, 316 (8th Dist. 1994).

**Interaction and Interrelationship**

**R.C. 2151.414(D)(1)(a)**

**{¶46}** The evidence demonstrated that the child's interactions with Father were generally good, and the child is bonded with Father.

**Wishes of the Children**

**R.C. 2151.414(D)(1)(b) and,**

**Custodial History**

**R.C. 2151.414(D)(1)(c)**

**{¶47}** Due to the age of the child, L.H. could not express his wishes concerning placement.

{¶48} L.H. had remained in the same stable foster placement for approximately fifteen months and has been thriving there. According to Caseworker Pounds, L.H. was strongly bonded with his foster parents, looked to them for love, reassurance, and guidance, and responded appropriately to their discipline and caregiving. The foster parents expressed a desire to adopt L.H. Pounds further testified that the Department explored placement with paternal grandmother through a home study; however, paternal grandmother ultimately determined she could not provide long-term care for the child. Paternal grandmother instead recommended the current foster placement, which the Department considered a kinship placement.

**Need for a Legally Secure Permanent Placement**

**R.C. 2151.414(D)(1)(d)**

{¶49} L.H. had been subject to agency involvement for nearly two years at the time the motion for permanent custody was filed. Despite years of intervention, services, and repeated opportunities to remedy the conditions leading to removal, Father failed to achieve or maintain a safe, stable, and drug free environment. The length and continuity of this custodial history weigh heavily in favor of permanency.

{¶50} The record overwhelmingly establishes that L.H. requires a legally secure placement that can provide long-term stability and address his needs. Father has not demonstrated the ability or willingness to provide such an environment.

**Additional Relevant Factors**

**R.C. 2151.414(D)(1)(e)**

{¶51} Father has demonstrated a lack of commitment, as evidenced by repeated refusals to engage in services, continuing drug use, and failure to engage in mental health

services. Despite extensive assistance from the Department, Father made no meaningful progress toward reunification.

### An extension of time would not change the result

**{¶52}** Father argues that the trial court should have given him an extension of temporary custody. Specifically, Father contends that an extension pursuant to R.C. 2151.415(D) would have been in the child's best interest because he had made significant progress on his case plan and there was reasonable cause to believe reunification, or another permanent placement could be achieved within the extension period.

**{¶53}** R.C. 2151.415(D)(4) and R.C. 2151.353(G), however, strictly limit the duration of temporary custody. Under those statutes, a juvenile court "shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier." Here, the complaint was filed on May 28, 2024. The Department filed its motion for permanent custody on September 9, 2025, approximately fifteen months later, leaving only nine months before the statutory sunset date. By the time the permanent custody hearing commenced on December 16, 2025, only six months remained before temporary custody would expire by operation of law.

**{¶54}** Moreover, the evidence presented at the hearing did not support granting an extension of temporary custody under R.C. 2151.415(D). An extension is appropriate only where the record demonstrates that the extension is in the child's best interest, the parent has made significant progress on the case plan, and there is reasonable cause to believe reunification, or another permanent placement can be achieved within the extension period.

{¶55} The record supports the trial court's conclusion that those statutory requirements were not satisfied here. Although Father had recently re-engaged in treatment and achieved a short period of sobriety, substantial portions of his case plan remained incomplete at the time of the hearing. Father had relapsed as recently as September 2025 after previously completing treatment, had failed to consistently engage in mental-health counseling, and had not completed parenting services. Father remained in structured sober-living housing and acknowledged that he still needed additional time to achieve sustained sobriety, secure stable housing, and obtain employment.

{¶56} Given Father's longstanding history of methamphetamine abuse, his recent relapse, and the limited time remaining before the statutory expiration of temporary custody, the trial court reasonably concluded there was not reasonable cause to believe reunification could be achieved within the remaining extension period. The evidence further demonstrated that L.H. had spent approximately fifteen months in a stable foster placement, was thriving there, and needed permanency and stability.

{¶57} Accordingly, competent, credible evidence supported the trial court's determination that an extension of temporary custody was not in the child's best interest and that permanent custody to the Department was warranted. *See In re R.B.*, 2023-Ohio-2706, ¶ 48 (5th Dist.); *In re C.K.*, 2020-Ohio-5437, ¶ 38 (5th Dist.); *In re J.M.*, 2013-Ohio-4139, ¶ 37 (5th Dist.).

**Conclusion**

{¶58} Considering the totality of the evidence and each factor under R.C. 2151.414(D), the record clearly supports the lower court's determination that granting permanent custody to the Department was in the child's best interest. The child's need

for safety, stability, and care - needs that were met only after removal - outweigh Father's expressed desire to maintain parental rights.

**{¶59}** We find the court's determination that Father had failed to remedy the issues that caused the initial removal, and, therefore, the child could not be placed with him within a reasonable time or should not be placed with him was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶60}** We further find that the lower court's decision that permanent custody to the Department was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶61}** Because the evidence in the record supports the lower court's judgment, we overrule Appellant-Father's three assignments of error and affirm the decision of the Court of Common Pleas for Stark County, Ohio, Juvenile Court Division in Case Number 2024 JVC 00005.

{¶62} For the reasons stated in our Opinion, the judgment of the Court of Common Pleas for Stark County, Ohio, Juvenile Court Division, is affirmed.

{¶63} Costs to be paid by Appellant-Father C.H.


By: Popham, J.

King, P.J. and

Hoffman, J., concur